```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA


DANYON MCCARROLL                        CIVIL ACTION

VERSUS                                  NO: 12-2402

SEATRAX SERVICES, INC., ET AL.          SECTION: R(5)
```

**ORDER AND REASONS**

Before the Court is defendant Wood Group's motion for summary judgment.[1] For the following reasons, the Court GRANTS the motion.

## I.  BACKGROUND

### A. Procedural Background

This dispute arises out of a slip and fall accident that occurred on July 2, 2009.[2] Originally, Plaintiff Danyon McCarroll ("McCarroll") brought a negligence action in this Court against BP America Production Company ("BP"), *et al*, for injuries that he sustained from the slip and fall. *See McCarroll v. BP Am. Prod. Co.*, No. 10-1834, 2011 WL 4727831 (E.D. La. Oct. 6, 2011). BP was the owner of the BP ATLANTIS platform where the accident occurred, but McCarroll was employed by Grand Isle Shipyard ("GIS"), an independent contractor for BP. BP moved for summary

---

[1] R. Doc. 19.

[2] R. Doc. 8-6 at 2.

judgment that BP is not subject to vicarious liability or custodial liability. *Id.* The Court granted summary judgment in favor of BP because plaintiff "failed to establish control or supervision by BP, or BP's knowledge of any defect." *Id.*

Thereafter, McCarroll filed the current action in state court against Seatrax Services, Inc.("Seatrax") and amended his complaint to add Wood Group/Mo Services, Inc. ("Wood Group") as a defendant.[3] Wood Group/Mo Services, Inc. ("Wood Group") is successor in interest to Baker Mo ("Baker"), an independent contractor plaintiff alleges was negligent. McCarroll dismissed Seatrax as a defendant, after which Wood Group asserted the Court's diversity jurisdiction and removed the action.[4] Wood Group is the only remaining defendant in this action.

Plaintiff raises claims of negligence under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333, *et seq.*, and Louisiana Law.[5] Wood Group has filed two motions for summary judgment. At issue in this motion is whether Baker breached a legal duty to McCarroll and caused his accident.

---

[3] R. Doc. 1-6 at 5-9.

[4] R. Doc. 1.

[5] R. Doc. 1-6 at 7.

**B. Factual Background**

Plaintiff alleges that he slipped and fell while working on the deck of the BP ATLANTIS platform.[6] On the date of the accident, McCarroll was an employee of GIS.[7] GIS was performing services as an independent contractor for BP, the operator and owner of the ATLANTIS platform.[8] BP also hired Baker to perform crane operations, *inter alia*, as an independent contractor.[9] Baker employed two people to conduct its operations on the rig: a crane operator and "flag man."[10]

The accident occurred at approximately 1:00 p.m. when McCarroll and other GIS employees were assisting Baker with a shipment operation.[11] The GIS foreman on the platform instructed McCarroll and several other GIS employees to unhook containers being unloaded from a vessel using the platform crane.[12] The Baker crane operator lifted containers from the barge and then set them onto the platform.[13] The Baker flag man signaled the

---

[6] R. Doc. 8-4 at 3.

[7] R. Doc. 19-4 at 2.

[8]  R. Doc. 8-5 at 1.

[9] R. Doc. 19-7 at 1.

[10] *Id.* at 1.

[11] R. Doc. 19-3 at 15.

[12] *Id.* at 15.

[13] *Id.*

3

crane operator where to position the cargo on the deck of the platform.[14] When lowering the cargo from the barge onto the platform, the GIS employees, including McCarroll, "grab[bed] hold of the tag line and guide[d] the load into position on the deck."[15]

Once the cargo had been placed on the platform, McCarroll and other GIS coworkers disconnected the crane rigging from the container.[16] When the rigging on one container became "hung up," McCarroll decided to retrieve a bar from across the platform to dislodge it.[17] McCarroll walked across the deck to get the bar, used it to dislodge the rigging, and then walked across the deck to return the bar.[18] While walking back from returning the bar, McCarroll slipped and fell on the deck.[19] A light rain fell before the operation at issue and the deck was wet when McCarroll slipped.[20]

The central issue in this motion is whether Baker maintained supervisory authority over McCarroll at the time he slipped. GIS

---

[14] R. Doc. 19-7 at 2.

[15] *Id.* at 1.

[16] R. Doc. 19-3 at 15.

[17] R. Doc. 19-9 at 8.

[18] *Id.* at 9.

[19] Id.

[20] R. Doc. 19-3 at 14; R. Doc. 19-9 at 9.

provided its own foreman to supervise its employees.[21] McCarroll admitted that the GIS foreman provided his orders and assignments.[22] He testified that the GIS foreman told him each morning what his specific assignments were.[23] McCarroll further testified that, on July 2, 2009, his foreman "handed him over" to Baker and told him to unload the crane.[24] McCarroll testified that his foreman was not directly in the area where he was working but that GIS supervisors frequently left employees to perform their work without watching them.[25] Before the operation, McCarroll complained to his foreman that the rain constituted an unsafe condition.[26] The GIS foreman instructed McCarroll to continue working in the rain because the barge had to be unloaded.[27]

    McCarroll had limited communications with Baker employees. McCarroll could not communicate with the crane operator because he was in the cab of the crane.[28] The flag man communicated with

---

[21] R. Doc. 19-7 at 2; R. Doc. 19-3 at 4.

[22] R. Doc. 19-3 at 4.

[23] *Id.* at 6.

[24] R. Doc. 20-1 at 5-7.

[25] *Id.* at 10.

[26] R. Doc. 20-1 at 8-9.

[27] *Id.* at 9.

[28] R. Doc. 19-9 at 11.

GIS employees only to indicate where the containers would land.[29] McCarroll could not recall whether he actually spoke with the flag man.[30]

Wood Group moves for summary judgment that Baker did not owe a legal duty to McCarroll because Baker contractors did not exercise supervision or control over him. McCarroll argues that there is an issue of material fact whether Baker supervised McCarroll at the time of the accident.

## II.  LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth ultimate or conclusory

---

[29] R. Doc. 19-7 at 2.

[30] R. Doc. 19-9 at 11-12.

facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation marks omitted).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991)(citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.

The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.

*Id.* at 325. *See also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'")(citing *Celotex*, 477 U.S. at 332).

**III. DISCUSSION**

The Outer Continental Shelf Lands Act, 43 U.S.C. § 1333, *et seq.*, applies to this dispute because plaintiff was injured on a fixed oil platform located on the Outer Continental Shelf, off the Louisiana coast. The Outer Continental Shelf Lands Act directs the Court to apply the law of the state adjacent to the controversy to the extent not inconsistent with other federal laws and regulations. *See* 43 U.S.C. § 1333(a)(2)(A); *Rodrigue v. Aetna Cas. and Sur. Co.*, 395 U.S. 352, 355 (1969). The parties have not cited, and the Court has not found, any federal law that conflicts with the principles of Louisiana law that apply here. Accordingly, the Court applies Louisiana law to this dispute.

Under Louisiana law, allegations of negligence are reviewed under a five-part inquiry known as a duty-risk analysis. *Lemann v. Essen Lane Daiquiries, Inc.*, 923 So. 2d 627, 632-33 (La. 2006). To prevail, a plaintiff must prove that: "(1)the defendant had a duty to conform his conduct to a specific standard (the

8

duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) the actual damages (the damages element)." *Id.* at 633. The plaintiff must prove each element to establish liability. *Id.*

A threshold issue in a negligence action is whether the defendant owed a duty. *Id.* "Whether a duty is owed is a question of law." *Id.*; *Ellison v. Conoco, Inc.*, 950 F.2d 1196, 1205 (5th Cir. 1992). Courts consider the "unique facts and circumstances presented" in each action to determine whether a duty exists. *Id.*

Generally, an independent contractor does not owe a special duty to protect the employee of another independent contractor. *See Joyner v. Ensco Offshore Co.*, Civ. A. No. 99-3754, 2001 WL 118599 at *4 (E.D. La. Feb. 9, 2001); *Verdin v. Kerr McGee Corp.*, Civ. A. No. 95-1483, 1997 WL 39308 at *2 (E.D. La. Jan. 30, 1997); *Parker v. Petroleum Helicopters, Inc.*, No. Civ. A. 99-1139, 2002 WL 461655 at *1 n.2 (E.D. La. Mar. 20, 2002). Rather, the duty imposed upon fellow independent contractors is "that imposed on all persons, the exercise of reasonable care." *Joyner*, 2001 WL 118599 at *4.

In *Parker v. Petroleum Helicopters, Inc.*, the court held that under Louisiana law, an independent contractor owed no duty to another contractor's employee because it did not employ, share a contract, or actually supervise the plaintiff. 2002 WL 461655 at *1. Likewise, in *Gray v. Motiva Enterprises*, this Court held that an independent contractor owed no duty to another independent contractor because it did not employ, pay, or provide equipment to the plaintiff. 2002 WL 826606, at *2 (E.D. La. Apr. 30, 2002).

Here, the Court finds that Baker did not owe plaintiff a duty. Baker did not employ or have a contractual agreement with McCarroll or GIS. BP hired Baker as an independent contractor to perform the crane operations; it was not Baker's responsibility to supervise the employees of the co-independent contractor GIS. As in *Gray*, GIS - not Baker - provided McCarroll with all the tools necessary to perform his work on the ATLANTIS.[31] McCarroll slipped and fell as he returned from a *GIS* toolshed where he retrieved the bar used to pry the cargo rigging.[32] McCarroll received his assignment to unrig the cargo from his GIS supervisor, and he had the discretion to perform that task in the

---

[31] R. Doc. 19-3 at 5.

[32] R. Doc. 19-9 at 9.

manner he saw fit, including using a bar to pry loose the rigging.[33]

Nevertheless, McCarroll alleges that Baker actually supervised him during the cargo operation and, therefore, owed him a duty. McCarroll argues that Baker became his supervisor when GIS "handed him over" for the operation. However, the evidence clearly indicates that GIS continued to be McCarroll's supervisor. McCarroll admitted that the GIS foreman was his boss on ATLANTIS, and the GIS foreman instructed McCarroll to unload the barge.[34] Although the GIS foreman may not have stood and watched him, McCarroll admits that GIS supervision does not "entail watching you the entire time."[35]

Furthermore, Baker did not assume any role of authority or supervision over McCarroll. Baker's only communication with GIS employees was to alert them where the cargo would land. Indeed, McCarroll admitted that he did not receive instructions or equipment from Baker's crane operator or flag man.[36] McCarroll cannot recall a single conversation with either Baker employee.[37] Because McCarroll presents no evidence to show that Baker was

---

[33] *Id.* at 10.

[34] *Id.* at 12; R. Doc. 20-1 at 6.

[35] R. Doc. 20-1 at 10.

[36] R. Doc. 19-9 at 11-12.

[37] *Id.*

supervising him when he was injured, the Court finds that no genuine issue of material fact exists regarding whether Baker owed him a duty.

### IV. Conclusion

Accordingly, the Court grants defendant's motion for summary judgment.

New Orleans, Louisiana, this 24th day of July, 2013.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE